**Ira L. FRANK, Plaintiff,**

**v.**

**Tom RIDGE, Secretary, U.S. Department of Homeland Security, Defendant.**

**No. CIV.A.02-1235(RMU).**

United States District Court, District of Columbia.

Feb. 26, 2004.

Ira L. Frank, Springfield, VA, pro se.

Eric Lee Siegel, Henrichsen Siegel, PLLC, Washington, DC, for Plaintiff.

Laurie J. Weinstein, U.S. Attorney's Office, Washington, DC, for Defendant.

## *MEMORANDUM OPINION*

URBINA, District Judge.

### Granting the Defendant's Motion to Dismiss

In this employment-discrimination action, the *pro se* plaintiff[1] is a special agent

1. At the time the plaintiff initiated this action, he was *pro se*. In August 2003, after the parties completed briefing on the pending motion to dismiss, the plaintiff retained counsel. For purposes of resolving the motion to dismiss, the court follows the D.C. Circuit's guidance regarding *pro se* plaintiffs and construes the plaintiff's submissions liberally. *Richardson v. United States,* 193 F.3d 545, 548 (D.C.Cir.1999).

of the Immigration and Naturalization Service ("INS") who is suing the Secretary of Homeland Security ("the defendant").[2] The plaintiff brings suit pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* alleging that the INS discriminated against him on the basis of gender by demoting and transferring him after receiving allegations of inappropriate sexual comments. In response to the plaintiff's complaint, the defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). Because the court lacks subject-matter jurisdiction, the court grants the defendant's motion to dismiss.

## I. BACKGROUND

### A. Factual Background

This tale of two claims begins in 1996. The plaintiff, then a grade GS–15 supervisory special INS agent serving as Assistant District Director for Investigations in the San Antonio district office, was accused of making inappropriate comments of a sexual nature. Compl. ¶ 3.1. Although the plaintiff denied the allegations, the INS commenced an investigation. *Id.* ¶¶ 3.1, 3.4. In October 1998, after finding that the plaintiff had disobeyed orders and engaged in conduct unbecoming an officer, the district director for the Chicago INS field office demoted him to a grade GS–14 non-supervisory position and transferred him to Washington, D.C. *Id.* ¶¶ 3.5, 3.12; Def.'s Mot. to Dismiss ("Def.'s Mot.") at 1–2 (citing *Frank v. Ashcroft,* No. 01–0225, slip op. at 2 (W.D.Tex. Feb. 18, 2002)). The district director informed the plaintiff that he could either (1) appeal his demotion to the Merit Systems Protection Board ("MSPB"), and during that appeal raise any discrimination claims, or (2) proceed with any discrimination claims through the INS' equal employment opportunity ("EEO") process. Def.'s Mot. at 2 (citing *Frank,* slip op. at 2). The district director alerted the plaintiff that he could "appeal only through one of the two processes and whichever forum you file first with will determine your election of process." *Id.*

The chain of events which followed are critical to this case. In December 1998, with the assistance of counsel, the plaintiff appealed his demotion to the MSPB, also raising a defense of whistleblower protection. *Id.* (citing *Frank,* slip op. at 3); Pl.'s Opp'n at 2, 3 n. 3. In October 1999, the plaintiff refiled his MSPB appeal, adding a claim of religious discrimination.[3] Def.'s Mot. at 2; Pl.'s Opp'n at 2. After a three-day hearing, the MSPB administrative judge affirmed the plaintiff's demotion in July 2000. Compl. ¶ 2.3.5; Def.'s Mot. at 3 (citing *Frank,* slip op. at 3); Pl.'s Opp'n at 3. In September 2000, the plaintiff petitioned the MSPB for review of the MSPB administrative judge's decision, dropping his religious-discrimination claim in the process. *Id.*

2. As a result of the Homeland Security Act, the plaintiff now is employed by the Bureau of Immigration and Customs Enforcement ("ICE") of the Department of Homeland Security. Mem. Order dated May 6, 2003 at 2 n. 2. For purposes of this action, the court continues to refer to the INS rather than the ICE. *Cf. Guerro v. Senkowski,* 2003 WL 1623670, at *1 n. 2 (N.D.N.Y. Mar.28, 2003) (continuing to refer to the INS rather than the ICE for purposes of the suit before the court).

3. In the interim, the MSPB administrative judge twice dismissed his appeal without prejudice, first to permit the parties to undertake additional discovery, and then to allow the plaintiff to pursue his whistleblower complaint with another office. *Frank v. Dep't of Justice,* 1999 WL 33453249, at *1 (M.S.P.B. Apr. 14, 1999); *Frank v. Dep't of Justice,* 1999 WL 33453198, at *1 (M.S.P.B. Aug. 24, 1999).

In January 2000, while his MSPB appeal was underway, the plaintiff learned that the INS had failed to discipline a female INS grade GS–14 supervisory employee facing sexual-misconduct allegations.[4] Compl. ¶¶ 2.3.1, 3.7; Def.'s Mot. at 2 (citing *Frank*, slip op. at 3); Pl.'s Opp'n at 3. With this information in hand, the plaintiff filed an EEO complaint with the agency in February 2000 alleging that the INS demoted him on the basis of gender discrimination and, at the same time, notifying the agency of his ongoing MSPB demotion case. Compl. ¶¶ 1.1, 2.3.1–.2. In January 2001, before the MSPB issued its ruling on the plaintiff's demotion, the agency dismissed the plaintiff's gender-discrimination claim on the grounds that the plaintiff should have raised it in his MSPB case. *Id.* ¶ 2.3.4; Def.'s Mot. at 3 (citing *Frank*, slip op. at 3). The plaintiff once again appealed to the MSPB.[5] Compl. ¶ 2.3.7; Pl.'s Opp'n at 4.

In June 2001, with both the demotion appeal and the gender-discrimination claim now before it, the MSPB issued its decision. Compl. ¶ 2.3.8; Def.'s Mot. at 3 (citing *Frank*, slip op. at 4); Pl.'s Opp'n at 4. The MSPB upheld the MSPB administrative judge on the plaintiff's demotion. *Frank v. Dep't of Justice*, 2001 MSPB LEXIS 544, at *1–2 (M.S.P.B. June 21, 2001). The MSPB declined to consider the plaintiff's gender-discrimination claim, however, because the plaintiff had failed to raise the claim before the MSPB administrative judge and had not shown that he based the claim "on new and material evidence not previously available despite his due diligence." *Frank*, 2001 MSPB LEXIS 544, at *2.

Not satisfied with the MSPB decision, the plaintiff appealed to the Western District of Texas as a mixed case involving both demotion and discrimination claims.[6] Compl. ¶¶ 2.3.9–.10; Pl.'s Opp'n at 4–5. In March 2002, however, the court concluded that it lacked jurisdiction over the case and transferred it to the United States Court of Appeals for the Federal Circuit. Compl. ¶ 2.3.11. Believing that the Federal Circuit could not hear discrimination claims, the plaintiff appealed the MSPB gender-discrimination claim decision to the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶¶ 2.3.12–.13. In May 2002, the EEOC denied consideration of the plaintiff's claim on the grounds that it lacks jurisdiction over matters that the MSPB declines to hear on procedural grounds. *Id.* ¶ 2.3.14; Def.'s Mot. at 4–5 n. 1.

## B. Procedural History

In June 2002, the plaintiff filed his complaint in this court pursuant to Title VII, seeking declaratory relief and damages. Compl. ¶¶ 2.1, 9.1. The plaintiff executed service on the defendant in September 2002. Six months later, in March 2003, the defendant filed a motion for leave to late-file a motion to dismiss, followed by the motion to dismiss. The plaintiff responded with a motion to strike the defendant's motion to dismiss and a motion for referral to mediation. In May 2003, after concluding that the defendant's inadver-

4. The plaintiff indicates that he heard "sketchy allegations" regarding the female employee in December 1999, but waited to raise the matter until he received more reliable information. Pl.'s Opp'n at 3 n. 3.

5. More specifically, the plaintiff appealed to the MSPB Washington, D.C. regional office, which promptly forwarded his appeal to MSPB headquarters, apparently without an "opportunity for [the plaintiff] to provide input on that decision." Pl.'s Opp'n at 4; *see also* Compl. ¶¶ 2.3.6–.7.

6. At the time, the plaintiff was working in San Antonio, which is located in the Western District of Texas. Pl.'s Opp'n at 5.

tent delay constituted excusable neglect and stressing that courts strongly favor the resolution of disputes on their merits, the court granted the defendant's motion for leave to late-file its motion to dismiss and denied the plaintiff's motion to strike. Mem. Order dated May 6, 2003. The plaintiff subsequently retained counsel and filed a motion for oral argument. The court now turns to the defendant's motion to dismiss, the plaintiff's motion for oral argument, and the plaintiff's motion for referral to mediation.

## II. ANALYSIS

### A. Statutory and Regulatory Framework for Prosecution of Mixed Cases

Section 7702 of title 5 of the United States Code governs the prosecution of "mixed cases." 5 U.S.C. § 7702. A mixed case is "an adverse personnel action subject to appeal to the MSPB coupled with a claim that the action was motivated by discrimination." *Butler v. West,* 164 F.3d 634, 638 (D.C.Cir.1999). As our court of appeals has noted, "[t]he MSPB and EEOC regulations that structure the prosecution of mixed cases are extremely complicated, but they can be reduced to a decision tree, albeit a somewhat elaborate one." *Id.*

The employee's first decision in the tree is electing a forum in which to proceed. *Id.* The employee can file a "mixed-case appeal" with the MSPB or a "mixed-case complaint" with the agency EEO office, but not both.[7] *Id.* (citing 29 C.F.R. § 1614.302(b)). In either case, section 7702 directs the MSPB or the agency EEO office to consider both the discrimination claim and the adverse-personnel action. *Id.* (citing 5 U.S.C. § 7702(a)).

#### 1. Mixed–Case Appeals

If the employee elects to pursue a mixed-case appeal with the MSPB, the employee first receives an initial decision from an MSPB administrative judge. *Butler,* 164 F.3d at 638 (citing 5 C.F.R. §§ 1201.41(b), 1201.111). If dissatisfied with the initial decision, the employee may petition the MSPB for review. *Id.* at 639. The MSPB then issues a final decision, either by denying the petition and rendering the initial decision final, or by granting the petition and issuing its own decision.[8] *Id.* (citing 5 C.F.R. § 1201.113(b)-(c)).

If the employee remains dissatisfied, the next fork in the decision tree is options for appeal: the employee may appeal the entire case to federal court, appeal only the discrimination claim to the EEOC, or appeal the adverse-personnel action to the Federal Circuit. *Id.* (citing 5 U.S.C. § 7703(b); 5 C.F.R. §§ 1201.120, 1201.157, 1201.175; 29 C.F.R. § 1614.310(b)); *Powell v. Dep't of Defense,* 158 F.3d 597, 598–99 (D.C.Cir.1998). In making this decision, however, the employee should keep in mind that "only the Federal Circuit ha[s] jurisdiction to review a [MSPB] decision made on jurisdictional

7. A mixed-case complaint is "a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age or handicap related to or stemming from an action that can be appealed to the [MSPB]." 29 C.F.R. § 1614.302(a)(1). A mixed-case appeal is "an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, handicap or age." *Id.* § 1614.302(a)(2).

8. If the MSPB fails to issue a final decision within 120 days of the filing of an appeal to the MSPB, the employee may file a civil action in federal court. 5 U.S.C. § 7702(e)(1)(B).

grounds."[9] *Powell,* 158 F.3d at 599 (paraphrasing with approval *Wall v. United States,* 871 F.2d 1540, 1542 (10th Cir. 1989)); *see also Sloan v. West,* 140 F.3d 1255, 1262 (9th Cir.1998) (stating that "appeals of MSPB jurisdictional decisions involving mixed claims are properly venued in the Federal Circuit"). Therefore, "[w]hen an appeal has been taken to the [MSPB], until the discrimination issue and the appealable action have been decided on the merits by the [MSPB], an appellant is granted no rights to a trial de novo in a civil action" in federal court. *Powell,* 158 F.3d at 598 (quoting *Ballentine v. Merit Sys. Prot. Bd.,* 738 F.2d 1244, 1246 (Fed. Cir.1984)).

### 2. Mixed–Case Complaints

If the employee elects to file a mixed-case complaint with the agency EEO office, the employee receives a final decision from the agency EEO office.[10] *Id.* at 638; 29 C.F.R. § 1614.302(d)(1)(ii). The employee then must decide whether to appeal the final decision to the MSPB (and go through the MSPB mixed-appeal process described *supra*), file a civil action in federal court, or appeal only the discrimination claim to the EEOC. *Id.* at 638 & n. 9 (citing 29 C.F.R. §§ 1614.302(d)(1)(ii) & (3), 1614.310(a); *Sloan,* 140 F.3d at 1260).

### 3. Savings Clause

■ Finally, section 7702 contains a "savings clause" for erroneous filings in mixed cases. 5 U.S.C. § 7702(f). Section 7702(f) states that

> In any case in which an employee is required to file any action, appeal, or petition under this section and the employee timely files the action, appeal, or petition with an agency other than the agency with which the action, appeal, or petition is to be filed, the employee shall be treated as having timely filed the action, appeal, or petition as of the date it is filed with the proper agency.

*Id.* This provision "is written broadly and its meaning is plain and straightforward: when an employee files his or her mixed-case appeal in a timely manner, but with the wrong agency, the proper agency must treat the appeal as having been timely filed there." *Miller v. Dep't of Army,* 987 F.2d 1552, 1555 (Fed.Cir.1993). Hence, for example, if a plaintiff "erroneously filed her appeal with EEOC within the time limit for filing with the [MSPB], her appeal is considered timely filed with the [MSPB]." *Whittington v. Merit Sys. Prot. Bd.,* 80 F.3d 471, 474 (Fed.Cir.1996).

## B. The Court Grants the Defendant's Motion to Dismiss

■ In this case, the defendant asserts that the plaintiff, with the assistance of counsel, elected to file first with the MSPB and now cannot file in this court because he is bound by the consequences of that election. Def.'s Mot. at 4–7, 9. The defendant contends that the plaintiff failed to pursue his gender-discrimination claim with the MSPB, and thus that he failed to exhaust his administrative remedies for that claim. *Id.* at 7. As for the savings

9. The D.C. Circuit explained that "the boundaries of the [MSPB's] jurisdiction should be subject to uniform interpretation in a single forum—the Federal Circuit." *Powell v. Dep't of Defense,* 158 F.3d 597, 600 (D.C.Cir.1998) (relying on *Ballentine v. Merit Sys. Prot. Bd.,* 738 F.2d 1244, 1247 (Fed.Cir.1984)). *But see Downey v. Runyon,* 160 F.3d 139, 144–45 (2d Cir.1998) (rejecting *Ballentine's* reasoning).

10. If the agency EEO office fails to issue a final decision within 120 days of the filing of an appeal to the MSPB, the employee may file a civil action in federal court. 5 U.S.C. § 7702(e)(1)(A).

clause of subsection 7702(f), the defendant argues that it does not allow the plaintiff to save his gender-discrimination claim for this court, but at best allows him to save it for the MSPB. *Id.* at 8.

In response, the plaintiff does not deny that he elected to file with the MSPB, but states that the agency EEO office instructed him to file his gender-discrimination claim pursuant to the usual EEO process. Pl.'s Opp'n at 2–3. The plaintiff asserts that he did not learn that he should have raised the gender-discrimination claim before the MSPB until nearly one year later, when the agency EEO office dismissed his claim. *Id.* at 4. In the plaintiff's view, section 7702(f) saved his gender-discrimination claim for the MSPB, but the MSPB erred by applying a new-evidence standard instead of remanding the claim for a limited hearing. *Id.* at 7–8, 10. The plaintiff contends that the Western District of Texas then compounded the MSPB's error by transferring the case to the Federal Circuit. *Id.* at 8. Finally, the plaintiff urges the court to look past any procedural errors to allow him to address the merits of his gender-discrimination claim "just as" the court chose to look past the defendant's delay in responding to the complaint. *Id.* at 13.

The court concludes that it lacks jurisdiction over the plaintiff's complaint. *Powell,* 158 F.3d at 598; *Ballentine,* 738 F.2d at 1246. The plaintiff elected to pursue the MSPB route, filing a mixed-case appeal with the MSPB challenging his demotion and the alleged religious discrimination on which it was based. Def.'s Mot. at 2; Pl.'s Opp'n at 2; 29 C.F.R. § 1614.302(a)(2). After he abandoned his religious-discrimination claim but before the MSPB issued a final decision on his demotion, the plaintiff effectively transferred his gender-discrimination claim, via appeal, to his MSPB case. *Frank,* 2001 MSPB LEXIS 544, at *2 (noting that "[i]t appears that [the plaintiff] is requesting the [MSPB] to consider his gender discrimination defense in conjunction with the instant appeal"). The MSPB declined to consider the gender-discrimination claim for failure to raise it below and to show that the claim was based on new and previously unavailable evidence. *Id.* Because the MSPB did not decide the gender-discrimination claim on its merits, the plaintiff did not have the right to a trial *de novo* in federal court. *Powell,* 158 F.3d at 598; *Ballentine,* 738 F.2d at 1246. Accordingly, the Western District of Texas transferred the plaintiff's case to the Federal Circuit. *Frank,* slip op. at 5–6 (citing *Ballentine,* 738 F.2d 1244). It is in that venue that the plaintiff may raise concerns about any perceived errors.[11] *Powell,* 158 F.3d at 599; Pl.'s Opp'n at 8. Accordingly, the court grants the defendant's motion to dismiss.[12]

11. To the extent that the plaintiff presses these arguments here, he effectively asks the court to revisit the decision of the Western District of Texas. But "a decision of a court of coordinate status is entitled to be considered 'law of the case,'" and "courts should be loathe to disturb [that decision] unless [it] was 'clearly erroneous and would work a manifest injustice.'" *Hill v. Henderson,* 195 F.3d 671, 678 (D.C.Cir.1999) (quoting *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)).

12. As noted, the plaintiff urges the court to allow him to address the merits of his gender-discrimination claim given that the court allowed the defendant to address the merits of the complaint. Pl.'s Opp'n at 13. The court understands the plaintiff's frustration with the "extremely complicated" regulations governing mixed cases. *Butler,* 164 F.3d at 638. But while the court has the discretion to enlarge time periods pursuant to Federal Rule of Civil Procedure 6(b), it cannot create subject-matter jurisdiction where there is none. *Douglas v. E.G. Baldwin & Assocs., Inc.,* 150 F.3d 604,

## III. CONCLUSION

For the foregoing reasons, the court grants the defendant's motion to dismiss.[13] An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 26th day of February, 2004.

608 (6th Cir.1998); *see also Akinseye v. District of Columbia,* 339 F.3d 970, 971 (D.C.Cir. 2003) (stating that "subject-matter jurisdiction is an Art. III as well as a statutory requirement[, and] no action of the parties can confer subject-matter jurisdiction upon a federal court"). . .

**13.** Because the court does not have subject-matter jurisdiction, the court does not address the plaintiff's motion for oral argument or for referral to mediation.